**NOT FOR PUBLICATION**

```
                  UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| BRUCE CLERMONT, et al., : | |
| : | CIVIL ACTION NO. 08-4257 (MLC) |
| Plaintiffs, : | |
| : | **MEMORANDUM OPINION** |
| v. : | |
| : | |
| DEVON BROWN, et al., : | |
| : | |
| Defendants. : | |

**COOPER, District Judge**

Plaintiffs, Bruce Clermont ("Clermont"), David Woolson ("Woolson"), Dennis Rockefeller ("Rockefeller"), and Emily Santiago ("Santiago"), brought this action against defendants, Devon Brown ("Brown"), Stephen Murphy ("Murphy"), Ronald L. Bollheimer ("Bollheimer"), and the New Jersey Department of Corrections (the "DOC"), alleging violations of the First Amendment, Fifth Amendment, and Fourteenth Amendment to the United States Constitution.  (Dkt. entry no. 1, Compl.) Defendants now move to dismiss the Complaint for (1) lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), and (2) failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). (Dkt. entry no. 7.)  Plaintiffs oppose the motion.  (Dkt. entry nos. 9, 10.)  An oral hearing was held on August 7, 2009.  (Dkt. entry no. 13.)  For the reasons stated herein, the Court will (1) grant the motion to the extent that it seeks to dismiss the

Complaint insofar as it is asserted against the DOC as a defendant, and (2) deny the motion to the extent that it seeks additional relief.

## BACKGROUND

Clermont, Woolson, and Rockefeller, corrections officers employed by the DOC, were accused of assaulting, or facilitating an assault on, Albert Cortes, an inmate at the Albert C. Wagner Youth Correctional Facility (the "youth facility") on January 11, 2004. (Compl. at 4-6.) The three officers were suspended without pay pending investigation of the charges. (Id.) Plaintiff Santiago, also a corrections officer employed by the DOC at the youth facility, was subsequently suspended from her position in February 2004, for (1) "allegedly falsifying a report concerning the allegations lodged against . . . Clermont, Woolson, and Rockefeller," and (2) "refus[ing] to implicate . . . Clermont, Woolson, and Rockefeller in the alleged assault against Cortes." (Id. at 6.)[1]

While the charges were pending, two lawful rallies were held by the Patrolmen's Benevolent Association - plaintiffs' local representative union – on March 18, 2004, and April 14, 2004, to protest the suspensions without pay. (Id. at 5-6.)

---

[1] Another officer, Sergeant Guy Poretti, was also charged along with Woolson, Clermont, and Rockefeller, but is not a party to this action and does not appear to have been a party to the same disciplinary proceedings as plaintiffs. (See Compl. at 8.)

2

Disciplinary appeal proceedings regarding the charges against Clermont, Woolson, and Rockefeller were held by defendant Murphy, a hearing officer, on March 18, 2004, and March 26, 2004. (Id. at 4.) At the conclusion of the proceedings, Murphy drafted a decision concluding that there was no credible evidence to support the charges brought against the three officers (the "Draft Decision"). (Id.) The Draft Decision expressly noted, inter alia, that (1) there were "no inmates or officers to corroborate any of the events as related by Cortes," (2) "Cortes was not a persuasive witness and his testimony was not credible," and (3) Murphy believed that the forensic pathologist's testimony, stating Cortes's injuries appeared to be the result of an assault, would have been different had he been "initially asked whether or not the injuries were self-inflicted and he had the information about the past psychological/medical history of Cortes." (Id., Ex. A at 27; see id., Ex. C, 12-13-06 Murphy Dep. at 24.)

Murphy's supervisor sent the Draft Decision to defendant Bollheimer, special assistant to defendant Brown, Commissioner of the DOC, for approval. (Id. at 5.) Upon Bollheimer's direction, however, the Draft Decision was returned to Murphy with instruction to reverse the outcome and find that the three officers should be terminated. (Id.) Murphy, following this directive, removed, inter alia, the factual and credibility

3

findings from the Draft Decision, and issued a decision on or about April 15, 2004, sustaining the charges and imposing the penalty of termination.  (Id.; see id., Ex. B at 26; id., Ex. C, Murphy Dep. at 26-33.)

Clermont, Woolson, and Rockefeller filed notice of a tort claim, pursuant to N.J.S.A. § 59:1-1 et seq., alleging wrongful termination, on August 25, 2004.  (Id. at 6.)  Rather than proceed to suit, however, the three terminated officers, without knowledge of Murphy's initial Draft Decision at the time, executed settlement agreements with the DOC in October 2004.  (Id. at 6-7.)  Pursuant to the agreements, Clermont, Woolson, and Rockefeller were reinstated as corrections officers and the charges against them regarding the alleged assault were withdrawn.  (Id. at 6.)  Clermont, Woolson, and Rockefeller were permitted to return to work for the DOC on November 1, 2004.  (Id. at 7-8.)  Upon their returns, each was transferred, against their wishes, from the youth facility to another state correctional facility.  (Id.)[2]

Santiago was also permitted to return to work at the DOC in October 2004, and was transferred against her wishes from the youth facility to another state correctional facility.  (Id. at 8.)  A disciplinary proceeding regarding the charges against her

---

[2] Woolson and Clermont returned in November 2004, while Rockefeller chose not to return until May 2005.  (Compl. at 7-8.)

4

was commenced in July 2005.  (Id. at 6.)  It is alleged that the proceeding, however, was suspended by the hearing officer "due to gross inconsistencies in the testimony of inmate Cortes."  (Id.)

Murphy, on December 13, 2006, was deposed in connection with a separate action regarding the incident brought by Sergeant Poretti.  (Id. at 8.)  During the deposition, Murphy explained that he initially drafted and sent the Draft Decision for approval, but was ordered to reverse the decision.  (Id. at 8; see id., Ex. C., Murphy Dep.)  Murphy stated that he felt the charges against Clermont, Woolson, and Rockefeller should not have been sustained, explaining:

> The only evidence in my mind against them came from an inmate I found totally incredible, not credible, and an investigator who agreed with the inmate.  Other than that, there were no eyewitnesses to any type of assault happening, none.  The only other witness that they had was a forensic pathologist.

(Id., Ex. C, Murphy Dep. at 24.)  Murphy further stated that the evidence against the officers was "inconclusive."  (Id.)  Murphy also stated that upon a thorough review of the content of his Draft Decision, the discovery, the evidence, and the testimony, he did not see "how any other conclusion could have been drawn." (Id. at 72.)

Plaintiffs contend it was after this deposition, in January 2007, that they first learned of the Draft Decision.  (Dkt. entry no. 10, Pls. Br. at 3.)  Plaintiffs filed the Complaint on August 22, 2008, alleging that defendants "willfully and maliciously

5

abrogat[ed] the Due Process to which Plaintiffs were entitled in the disciplinary hearing," and thus deprived them of a "[c]onstitutionally and statutorily protected interest in the terms and conditions of their employment" in violation of the Fifth Amendment and Fourteenth Amendment through 42 U.S.C. § ("Section") 1983.  (Compl. at 9-11, First Count).  Plaintiffs further allege that defendants "engaged in unlawful retaliation," in violation of the First Amendment, against plaintiffs by issuing Murphy's final report in response to the lawful rallies protesting the unpaid suspensions of plaintiffs.  (Id. at 11-12, Second Count).

Defendants now move to dismiss the Complaint, contending (1) the Section 1983 claims are barred because (a) plaintiffs did not file the Complaint within two years of the alleged violations of their rights, (b) defendants are immune under the Eleventh Amendment, and (c) the DOC and its officials are not "persons" for purpose of suit under Section 1983, and (2) the Second Count – the First Amendment claim – fails to state a claim upon which relief can be granted.  (Dkt. entry no. 7, Defs. Br. at 9-18.)

### DISCUSSION

**I. Legal Standards Governing a Motion to Dismiss**

    **A. Rule 12(b)(1)**

A defendant may move to dismiss a claim for lack of subject matter jurisdiction under Rule 12(b)(1).  Fed.R.Civ.P. 12(b)(1).

6

Such motion may be made at any time. Iwanowa v. Ford Motor Co., 67 F.Supp.2d 424, 437-38 (D.N.J. 1999). The defendant may facially challenge subject matter jurisdiction by arguing that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction. Id. at 438. Under this standard, a court assumes that the allegations in the complaint are true, and may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. Cardio-Med. Assoc., Ltd. v. Crozer-Chester Med. Ctr., 721 F.2d 68, 75 (3d Cir. 1983); Iwanowa, 67 F.Supp.2d at 438.

A defendant can also attack subject matter jurisdiction by factually challenging the jurisdictional allegations set forth in the complaint. Iwanowa, 67 F.Supp.2d at 438. Under this standard, "no presumptive truthfulness attaches to plaintiff's allegations and the existence of disputed material facts will not preclude the Court from evaluating for itself the merits of jurisdiction claims." Pashun v. Modero, No. 92-3620, 1993 U.S. Dist. LEXIS 7147, at *6 (D.N.J. May 26, 1993). The Court may consider affidavits, depositions, and testimony to resolve factual issues and is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. Iwanowa, 67 F.Supp.2d at 438. The defendant may factually attack subject matter jurisdiction at any stage in the litigation,

including before the answer has been filed.  Berardi v. Swanson Mem'l Lodge No. 48 of Fraternal Order of Police, 920 F.2d 198, 200 (3d Cir. 1990) (explaining that a defendant may factually attack subject matter jurisdiction before filing an answer); see Pashun, 1993 U.S. Dist. LEXIS 7147, at *6.

    **B.    Rule 12(b)(6)**

The Court may also dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  On a Rule 12(b)(6) motion to dismiss, a court generally must accept as true all of the factual allegations in the complaint, and must draw all reasonable inferences in favor of the plaintiff.  Cal. Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 134 (3d Cir. 2004); Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001).  A court, however, need not credit bald assertions or legal conclusions alleged in the complaint.  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007).  The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citation omitted).  While plaintiffs are not required to plead all the facts serving as a basis for the claim, the complaint must "provide the opponent with fair notice of a claim and the grounds on which that claim is based."  Kanter, 489 F.3d at 175;

8

see also Allia v. Target Corp., No. 07-4130, 2008 WL 1732964, at *3 (D.N.J. Apr. 10, 2008).

The Court, when considering a motion to dismiss, may generally not "consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  However, if the Court exercises discretion and permits a party to present matters outside the pleadings, the Court must (1) convert the motion to dismiss into one for summary judgment, and (2) allow the parties a reasonable opportunity to present all material pertinent to such a motion under Rule 56. See Fed.R.Civ.P. 12(b).  An exception to this general rule is that the Court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment.  Angstadt v. Midd-West Sch. Dis., 377 F.3d 338, 342 (3d Cir. 2004).

## II. Statute of Limitations

Civil rights claims in New Jersey are governed by a two-year limitations statute.  N.J.S.A. § 2A:14-2.  Defendants argue that plaintiffs' Section 1983 claims are time-barred and must be dismissed, contending that each alleged injury accrued over four years before the Complaint was filed in August 2008: (1) plaintiffs' suspensions in January and February 2004; (2) the

9

questionable disciplinary proceedings against Clermont, Woolson, and Rockefeller in March and April 2004; (3) Clermont, Woolson, and Rockefeller's termination in April 2004; (4) the settlement agreements in October 2004; and (5) plaintiffs' transfers, against their wishes, to other correctional facilities in October and November 2004 and May 2005.  (Defs. Br. at 7-9; dkt. entry no. 12, Defs. Reply Br. at 3-6.)

Plaintiffs, however, argue that their claims are not time-barred because the statute's accrual date is not the date on which the injuries occurred, but the date on which plaintiffs discovered the injuries.  (Pls. Br. at 3.)  Plaintiffs contend they had no knowledge of, and no way to gain the knowledge of, their actionable injuries under Section 1983 until approximately January 2007, when learning of Murphy's Draft Decision from his December 2006 deposition.  (Id. at 2-4, 6.)  Plaintiffs, furthermore, contend that, even if the Court determines that the claims accrued outside of the statutory period, the statute should be equitably tolled due to the "extraordinary circumstances" that "forc[ed] Plaintiffs Clermont, Woolson and Rockefeller to execute a settlement agreement" and prevented plaintiffs from asserting their claims earlier. (Id. at 2, 4-5.)

10

### A. The Discovery Rule

The statute of limitations begins to run when a plaintiff's cause of action accrues. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994). Under the federal discovery rule, the accrual date is the date on which the plaintiff discovers that he or she has been injured, rather than the date on which the injury occurs. Id. The discovery rule thus functions to delay the running of the statutory limitations period, "but only until the plaintiff has discovered, or, by exercising reasonable diligence, should have discovered (1) that he or she has been injured, and (2) that this injury has been caused by another party's conduct." Id. at 1386. The cause of action, however, accrues upon awareness of actual injury, not upon awareness that the injury constitutes a legal wrong. Id. at 1386-87 (finding, in a Title VII action, that the limitations period accrued when the discriminatory act occurred, rather than the date the victim first perceived a discriminatory motive); see Hanani v. N.J. Dep't of Envtl. Prot., 205 Fed.Appx. 71, 76 (3d Cir. 2006) (finding violation occurred when plaintiff was first notified that her name had been removed from the promotions list).

Plaintiffs here "discovered" their injuries at the time they were suspended in January or February 2004. The moment plaintiffs were informed of their suspensions, they became aware

11

(1) that they had been injured, i.e., suspended, and (2) that this injury had been caused by another party's conduct. Plaintiffs did not file the Complaint until August 2008, more than four years after the initial injury.  Furthermore, although plaintiffs' injuries may be said to have continued until plaintiffs were transferred against their wishes, the transfers appear to have taken place in October and November 2004 and May 2005, all more than two years before the Complaint was filed. Although plaintiffs may have been deceived regarding the underlying motive behind the suspensions and transfers, that is irrelevant for the purposes of the discovery rule.  See Oshiver, 38 F.3d at 1391.  The discovery rule is thus to no avail of the plaintiffs, and the claims fall outside of the statutory limitations period.[3]

### B.   Equitable Tolling

"Equitable tolling functions to stop the statute of limitations from running where the claim's accrual date has already passed."  Id. at 1387.  Equitable tolling may be appropriate, inter alia, "when some exceptional circumstance

---

[3] Defendants further argue that plaintiffs were alerted to their injuries and took measures to address them in 2004 by filing the notice of tort claim with the DOC.  (Defs. Reply Br. at 6.)  The Court offers no opinion regarding any of the plaintiffs' compliance or failure to comply with the notice provisions under New Jersey Tort Claims Act, N.J.S.A. § 59:1-1 et seq.

12

prevents a plaintiff from asserting a right despite the exercise of reasonable diligence." Hanani, 205 Fed.Appx. at 77. Where a plaintiff has been actively misled regarding the reason for his or her alleged injury, "the equitable tolling doctrine provides the plaintiff with the full statutory limitations period, starting from the date the facts supporting the plaintiff's cause of action either become apparent to the plaintiff or should have become apparent to a person in the plaintiff's position with a reasonably prudent regard for his or her rights." Oshiver, 38 F.3d at 1389. To activate the doctrine in such a situation, a plaintiff thus must show that (1) the defendant actively misled the plaintiff regarding the actionable injury, and (2) this deception caused the plaintiff's non-compliance with the limitations provision. Id. at 1387; see Hanani, 205 Fed.Appx. at 77.

In Oshiver v. Levin, Fishbein, Sedran & Berman, the plaintiff, a woman, was discharged from employment with the defendant with the explanation that the defendant did not have sufficient work to sustain her position. 38 F.3d at 1384. The plaintiff later learned that, shortly after her dismissal, a man had been hired to take her place, and filed a complaint, alleging discrimination under Title VII. Id. The district court dismissed the complaint, finding that the plaintiff's federal claims were time-barred. Id. The Third Circuit, however,

13

reversed the decision, determining that the doctrine of equitable tolling had been activated as the plaintiff's complaint alleged that (1) the defendant actively misled her regarding the reason for her discharge, and (2) the critical fact that would have alerted a reasonable person to the alleged unlawful discrimination only became available to the plaintiff after the applicable statutory period had run.  Id. at 1392.  The Court, offering no view on whether the plaintiff would derive the ultimate benefit from the equitable tolling doctrine, found that the following factual questions must first be answered:

> (1) whether the [defendant] actively misled [the plaintiff] with respect to her discriminatory discharge action; (2) if so, whether a person such as [the plaintiff], with a reasonably prudent regard for her rights, would have been misled by the [defendant's] communication; and (3) if so, whether a person in [the plaintiff's] position with a reasonably prudent regard for her rights would have learned of the [defendant's] deception sooner?

Id.

Plaintiffs allegations here essentially charge that (1) they were actively misled regarding the reason for their suspensions and transfers, and (2) the critical fact that would have alerted a reasonable person to the alleged civil rights violations – that the Hearing Officer found the charges were not sustainable, but the charges were nonetheless sustained – did not become known to the plaintiffs until approximately January 2007.  Plaintiffs contend that they were coerced into signing the settlement agreements with the DOC without being apprised of this critical

14

fact, and "informed that if they did not accept the settlement agreements, and return to work, they would be considered absent without leave and would for that reason be terminated," and thus were "effectively forced to return to their positions without the opportunity for exoneration on the merits." (Compl. at 7.)

Following <u>Oshiver</u>, the Court finds that these allegations, taken as true and giving plaintiffs the benefit of all reasonable inferences, are sufficient to activate the doctrine of equitable tolling.[4] Factual inquiries must be undertaken before a proper resolution of the equitable tolling issue can be reached, such as whether (1) defendants effectively misled plaintiffs with respect to the alleged violations of their civil rights, <u>i.e.</u>, the basis for their suspensions and transfers, (2) persons in plaintiffs' positions with a reasonably prudent regard for their rights would have been misled by defendants' communications, and (3) persons in plaintiffs' position with a reasonably prudent regard for their rights would have learned of the defendants' deception sooner. The Court thus finds the action should proceed. The parties will have the opportunity to move for summary judgment on this issue at a later date if discovery deems appropriate. <u>See</u> <u>Hanani</u>, 205 Fed.Appx. at 77-78.

---

[4] The Court acknowledges that this action differs from <u>Oshiver</u> as it is not a Title VII action. The Court, however, has not been presented with any authority demonstrating that there would be a different standard involved for constitutional violations.

**III. Liability under the Eleventh Amendment and Section 1983**

Defendants further contend that the Complaint must be dismissed because the claims are barred by the Eleventh Amendment and because defendants are not "persons" amenable to suit under Section 1983.  (Defs. Br. 11-15.)

The Eleventh Amendment provides states, state agencies, and state officials with immunity from suits in federal court brought by citizens against them in their official capacities.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989).  To state a claim under Section 1983, a plaintiff must show that a "person" acted to deprive him of his constitutional rights.  See 42 U.S.C. § 1983.  "Neither the state, nor a governmental entity that is an arm of the state for Eleventh Amendment purposes, nor a state official who acts in his or her official capacity, is a "person" within the meaning of § 1983."  Will, 491 U.S. at 70-71; Garcia v. Richard Stockton College, 210 F.Supp.2d 545, 549 (D.N.J. 2002) (finding that a state is not a "person" that may be sued under Section 1983, regardless of whether the state has waived its immunity).  It is undisputed that the DOC is an agency of the State of New Jersey.  Claims against the DOC are thus barred.  See Febres v. Camden Bd. of Educ., 445 F.3d 227, 229 (3d Cir. 2006); Garcia, 210 F.Supp.2d at 550 (D.N.J. 2002) (holding that a plaintiff may not sue the State of New Jersey, or its alter egos, in federal court); Grabow v. S. State Corr. Facility,

16

726 F.Supp. 537, 538-39 (D.N.J. 1989) (finding the DOC is not a person under Section 1983).

State officials, however, sued in their individual capacities, are "persons" within the meaning of Section 1983. Hanani, 205 Fed.Appx. at 79.  The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under Section 1983 solely by virtue of the "official" nature of their acts.  Id.  ("However, the Eleventh Amendment provides the state, state agencies, and state officials with immunity from suits against them in their official capacities."); see Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990) (stating the Court must look to the complaint and course of proceedings to determine if a defendant was sued in his or her personal capacity).

Plaintiffs here are correct in asserting that the Individuals Defendants can be sued in their personal capacities under Section 1983.  The Court will thus not dismiss the claims brought against Brown, Murphy, and Bollheimer insofar as they are sued in their individual capacities.

**IV.  First Amendment Claim**

Defendants further contend that the Second Count of the Complaint - the First Amendment claim – must be dismissed as plaintiffs have failed to utilize Section 1983 to seek redress of

17

the alleged constitutional violation.  (Defs. Br. at 15-16.)  The Court agrees that plaintiffs must utilize the provisions of Section 1983 to seek redress of the alleged violation of their constitutional rights.  Rather than have plaintiffs amend the Complaint, however, the Court will read Section 1983 into the Count, and finds that plaintiffs have sufficiently alleged a violation of their First Amendment rights.

## CONCLUSION

The Court, for the reasons stated supra, will (1) grant the motion to the extent that it seeks to dismiss the Complaint insofar as asserted against the DOC as a defendant, and (2) deny the motion to the extent that it seeks additional relief.  The Court will issue an appropriate Order and Judgment.


                                        s/ Mary L. Cooper
                                     **MARY L. COOPER**
                                     United States District Judge

Dated:    August 14, 2009

18