**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| BRUCE CLERMONT, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 08-4257 (MLC) |
| v. | **MEMORANDUM OPINION** |
| DEVON BROWN, et al., | |
| Defendants. | |

**COOPER, District Judge**

The plaintiffs, Bruce Clermont ("Clermont"), David Woolson ("Woolson"), Dennis Rockefeller ("Rockefeller"), and Emily Santiago ("Santiago"), originally brought this action against the defendants, Devon Brown ("Brown"), Stephen Murphy ("Murphy"), Ronald Bollheimer ("Bollheimer"), and the New Jersey Department of Corrections ("NJDOC"), alleging violations of their First Amendment, Fifth Amendment, and Fourteenth Amendment rights. (Dkt. entry no. 1, Compl.)  The defendants moved to dismiss the Complaint in February 2009.  (Dkt. entry no. 7, First Mot. to Dismiss.)  The Court dismissed the Complaint insofar as it asserted claims against the NJDOC and against Brown, Murphy, and Bollheimer in their official capacities.  (Dkt. entry no. 14, 8-14-09 Op.)  The Court permitted the claims to proceed against Brown, Murphy, and Bollheimer in their individual capacities. (Id.)  The remaining defendants now move to dismiss the Complaint.  (Dkt. entry no. 18, Second Mot. to Dismiss.)  The

plaintiffs oppose the motion.  (Dkt. entry no. 21, Second Pls. Br.)  The Court determines the motion on the briefs without an oral hearing, pursuant to Federal Rule of Civil Procedure ("Rule") 78(b).  For the reasons stated herein, the Court will grant the motion to dismiss.

## BACKGROUND

Clermont, Woolson, and Rockefeller are employed as corrections officers by the NJDOC.  (Compl. at 4.)  They were accused of assaulting Albert Cortes ("Cortes"), an inmate at the Albert C. Wagner Youth Correctional Facility (the "youth facility"), on January 12, 2004.  (Dkt. entry no. 18, Defs. Br. at 2.)  The three officers were suspended without pay pending investigation of the charges.  (Compl. at 4-6.)  Plaintiff Santiago, also a corrections officer employed by the NJDOC at the youth facility, was subsequently suspended from her position in February 2004, for (1) "allegedly falsifying a report concerning the allegations lodged against . . . Clermont, Woolson, and Rockefeller," and (2) "refus[ing] to implicate . . . Clermont, Woolson, and Rockefeller in the alleged assault against Cortes."  (Id. at 6.)

While the charges were pending, two lawful rallies were held by the Patrolmen's Benevolent Association - plaintiffs' local representative union – on March 18, 2004, and April 14, 2004, to protest the suspensions without pay.  (Id. at 5-6.)

2

Disciplinary appeal proceedings regarding the charges against Clermont, Woolson, and Rockefeller were held by defendant Murphy, a hearing officer, on March 18, 2004, and March 26, 2004. (Id. at 4.) At the conclusion of the proceedings, Murphy drafted a decision concluding that there was no credible evidence to support the charges brought against the three officers (the "Draft Decision"). (Id.)

Murphy's supervisor sent the Draft Decision to defendant Bollheimer, special assistant to defendant Brown, Commissioner of the NJDOC, for approval. (Id. at 5.) Upon Bollheimer's direction, however, the Draft Decision was returned to Murphy with instruction to reverse the outcome and find that the three officers should be terminated. (Id.) Murphy, following this directive, removed, inter alia, the factual and credibility findings from the Draft Decision, and issued a decision on or about April 15, 2004, sustaining the charges and imposing the penalty of termination. (Id.; see id., Ex. B at 26; id., Ex. C, Murphy Dep. at 26-33.)

Clermont, Woolson, and Rockefeller filed notice of a tort claim, pursuant to N.J.S.A. § 59:1-1 et seq., alleging wrongful termination, on August 25, 2004. (Compl. at 6.) Rather than proceed to suit, however, the three terminated officers, without knowledge of Murphy's initial Draft Decision at the time, executed settlement agreements with the NJDOC in October 2004.

3

(Id. at 6-7.)  Pursuant to the settlement agreements, Clermont, Woolson, and Rockefeller were reinstated as corrections officers and the charges against them regarding the alleged assault were withdrawn.  (Id. at 6.)  Clermont, Woolson, and Rockefeller were permitted to return to work for the NJDOC on November 1, 2004. (Id. at 7-8.)

Santiago was also permitted to return to work at the NJDOC in October 2004 following a settlement agreement, and was transferred from the youth facility to another state correctional facility.  (Id. at 8.)  A disciplinary proceeding regarding the charges against her was commenced in July 2005.  (Id. at 6.)  It is alleged that the proceeding, however, was suspended by the hearing officer "due to gross inconsistencies in the testimony of inmate Cortes."  (Id.)

Murphy, on December 13, 2006, was deposed in connection with a separate action.  (Id. at 8.)  During the deposition, Murphy explained that he initially drafted and sent the Draft Decision for approval, but was ordered to reverse the decision.  (Id. at 8; see id., Ex. C., Murphy Dep.)  Murphy stated that he felt the charges against Clermont, Woolson, and Rockefeller should not have been sustained and that the evidence against the officers was "inconclusive."  (Id., Ex. C, Murphy Dep.)  Murphy also stated that upon a thorough review of the content of his Draft Decision, the discovery, the evidence, and the testimony, he did

4

not see "how any other conclusion could have been drawn." (Id. at 72.)

Plaintiffs contend it was after this deposition, in January 2007, that they first learned of the Draft Decision. (Dkt. entry no. 10, First Pls. Br. at 3.) Plaintiffs filed the Complaint on August 22, 2008, alleging that defendants "willfully and maliciously abrogat[ed] the Due Process to which Plaintiffs were entitled in the disciplinary hearing," and thus deprived them of a "[c]onstitutionally and statutorily protected interest in the terms and conditions of their employment" in violation of the Fifth Amendment and Fourteenth Amendment through 42 U.S.C. § ("Section") 1983. (Compl. at 9-11, First Count). Plaintiffs further allege that defendants "engaged in unlawful retaliation," in violation of the First Amendment, against plaintiffs by issuing Murphy's final report in response to the lawful rallies protesting the unpaid suspensions of plaintiffs. (Id. at 11-12, Second Count).

The defendants now move to dismiss the remaining claims because: (1) the plaintiffs' settlement agreements bar the current action; (2) the plaintiffs were not denied due process; and (3) Santiago fails to plead any facts to support her claim that she was denied due process and denied First Amendment protection. (Defs. Br. at 5.)

5

**DISCUSSION**

**I.   Motion to Dismiss - 12(b)(6) Standard**

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). At this stage, a "complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- that the 'pleader is entitled to relief.'" Iqbal, 129 S.Ct. at 1950 (quoting Rule 8(a)(2)).

**II.  Current Motion**

   **A.   The Parties' Arguments**

The defendants assert that the 2004 settlement agreements preclude the plaintiffs' claims. (Defs. Br. at 10.) The

settlement agreements stated that the agreements would "fully dispose of all issues in controversy between [the parties] with regard to this matter." (Id.)  Further, the settlement agreements contained a waiver provision through which the plaintiffs agreed to waive "all claims, suits, or actions . . . against . . . employees [of the NJDOC]." (Id.)  As such, the defendants state that the plaintiffs entered into a binding contract agreeing to waive their right to bring an action against the defendants alleging constitutional violations. (Id. at 13.)

The plaintiffs contend that the settlement agreements are invalid because they were executed under economic duress. (Second Pls. Br. at 9.)  Specifically, they state that they were threatened that if they failed to sign the agreements they would be deemed to have abandoned their positions. (Id.)  They contend that they were "under tremendous economic and psychological pressure to execute the agreements and save their jobs." (Id.)  They further contend that the agreements constituted a forced waiver of their constitutional rights. (Id. at 10.)

The defendants contend, however, that the plaintiffs were represented by counsel when executing the settlement agreements and that they indicated through various signatures and certifications that they entered into the settlement agreements voluntarily. (Dkt. entry no. 25, Defs. Reply Br. at 3.)  They further assert that the plaintiffs' challenge to the validity of

7

the settlement agreements should be barred by the doctrine of laches. (Id.)

The defendants specifically assert that, contrary to the plaintiffs' assertion, their signing of the settlement agreements did not waive their constitutional rights, but rather only waived their right to bring an action related to their suspension and discipline. (Id. at 3.) They contend that the plaintiffs waived rights to bring claims, suits, or actions against defendants, not their prospective exercise of constitutional rights. (Id. at 4.)

The defendants further argue that the plaintiffs each executed their settlement agreements with the assistance of their union representative and counsel. (Id.) They state that the plaintiffs all certified that they reviewed the settlement agreements with a full understanding of the terms, and entered into them voluntarily, understanding that the agreements would "terminate all claims and further appeal against the [NJDOC]." (Id. at 5.)

The defendants further assert that the plaintiffs have failed to allege economic duress. They state that economic duress must be more than "merely taking advantage of another's financial difficulty." (Id.) The defendants state that they made no wrongful or unlawful threat. (Id. at 7.) They further contend that the settlement agreements contained adequate consideration for the plaintiffs. (Id.) They state that

8

whatever pressure they may have exerted on the plaintiffs was at most "rightful undertaking of driving a hard bargain or taking advantage of the plaintiffs' financial difficulty which does not amount to duress." (Id. at 8.)

**B.    Economic Duress**

Economic duress is a defense to the validity of a contract in New Jersey. To properly allege economic distress, the party "must show that he has been the victim of a wrongful or illegal act or threat that deprived the victim of his unfettered will." Sauter v. Fed. Home Loan Bank, No. 08-899, 2009 WL 2424689, at *8 (D.N.J. Aug. 5, 2009) (citations omitted). "Merely taking advantage of another's financial difficulty, however, is not duress." Id. at *8 (citation omitted). "The fact that one party may have the upper hand in negotiations does not necessarily mean that the other party's agreement to a demand constitutes economic duress." Kare Distrib. Inc. v. Jam Labels & Cards LLC, No. 09-969, 2009 WL 3297555, at *6 (D.N.J. Oct. 9, 2009). Further, "where there is adequacy of consideration, there is generally no duress." Sauter, 2009 WL 2424689, at *10 (citation omitted). In Sauter, the Court held that the presence of adequate consideration precluded any claim of duress. Id. Additionally, the opportunity to consult with counsel can vitiate an economic duress claim. Harsco Corp. v. Zlotnicki, 779 F.2d 906, 911-12 (3d Cir. 1985).

9

The plaintiff's claims of economic duress are insufficient to invalidate the settlement agreements' prohibition of the current action.  "In reviewing a motion to dismiss . . . a court may consider . . . [any] documents attached to or specifically referenced in the complaint."  <u>Wingate Inns Int'l, Inc. v. Hightech Inn.Com LLC</u>, No. 07-5014, 2009 WL 348525 (D.N.J. Feb. 11, 2009).  As such, the Court has considered the settlement agreements in question.  The settlement agreements were supported by adequate consideration, including withdrawal of disciplinary proceedings, back pay, and restoration of benefits and seniority.  (Defs. Reply Br., Yi Cert., Exs. C-F.)  Further, the plaintiffs signed the settlement agreements with the assistance of counsel and certified that they entered into their agreements voluntarily.  (<u>Id.</u>)  Their certifications acknowledging that they understood that the agreements would terminate all claims and further appeal against the NJDOC were all signed by the parties and counsel.  (<u>Id.</u>)  The plaintiffs' claims of economic duress are without merit, and the settlement agreements preclude this action from proceeding.  As such, the Court will grant the motion to dismiss.

**CONCLUSION**

The Court, for the reasons stated <u>supra</u>, will grant the defendants' motion to dismiss the remaining claims. The Court will issue an appropriate order and judgment.

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:    December 23, 2009